Our final case for today is Kirklin v. United States. Mr. Beall. May it please the court if I may have a minute to figure out your new system here? When it says two, Mr. Beall, that means your rebuttal is starting because you said you wanted two minutes. Thank you, Judge. This is a 2255 petition claiming ineffective assistance of counsel. So under Strickland, petitioner must show both cause and prejudice. Judge Connelly found that counsel's failure to preserve an argument against the continued vitality of Supreme Court precedent is not considered to be objectively substandard. But we would submit that the precedent involved, which is Harris v. United States, was not vital at all at that point. Because the fifth, as Justice Sotomayor points out in a line, the fifth vote in Harris was from Justice Breyer, who in Harris said, I cannot easily distinguish apprendi from this case in terms of logic. Because I believe extending apprendi to mandatory minimums would have adverse practical as well as legal consequences. I cannot yet accept its rule. But from a lawyer's point of view, it certainly sounds like sooner or later Justice Breyer is going to accept apprendi. And so with that probability, counsel in this case should have objected to the brandishing enhancement. That sounds like the contention that the Supreme Court's rule that prior convictions may be considered without submitting them to the jury has always, because it was five to four and Justice Thomas has doubted it, a lawyer has to raise that issue in every single case. That can't be true. We've said over and over and over that the Supreme Court can change its law, but a lower court can't. I have a more concrete question. When did this sentencing occur in relation to the date of the grant of certiorari in Alleyne? That's in the brief. I put the four dates down. I believe the grant of cert in Alleyne was in Medios Reis. October 5th, 2020. That is October 5th, and the court hands its opinion down June 17, 2013. So Alleyne is in progress. Yes. Kirkland was sentenced in July. The petition was granted in October. This is 2012. And the opinion was issued in June of 2013. So, Mr. Beal, under your theory, to follow up on Judge Easterbrook's question, at what point did it become ineffective for federal criminal defense lawyers to fail to raise this issue? Well, my answer is that in a case where you have ---- In a case where it's relevant. Okay. Excuse me? In a case where it's relevant. Yes. And where you have a statement like Justice Breyer that I don't accept Apprendi, it certainly would be prudent for a counsel. My question is when did it become ineffective for Strickland purposes under your theory? Under my theory, when you have a situation where it's so easy to make an objection and you have a signal that an objection needs to be made. I'm sorry. I'm asking for a year, if not a month and a day. It would be the year that Apprendi came down because that's when Justice Breyer made his statement. Apprendi came down even before Harris. You must be thinking of Harris, and then you must be saying that from the day of Harris, every trial lawyer must object in every case. From the day of Harris itself. After 2002. So here's my problem with this. I mean, this is not the easiest area because, and I think it's very important to distinguish between actions that might be prudent on the part of trial counsel and actions that are so irresponsible as to fall below the performance standard that Strickland requires. When there's a governing Supreme Court decision, whether it's Harris, whether it's Almendares-Torres, the Judge Easterbrook just referred to, I mean, a defense lawyer might say, you know, I'm going to take on Almendares-Torres. I'm going to raise an Almendares-Torres issue in every single case. And sometimes when they do that for us, we say, well, we can't overrule the Supreme Court, but we'll certify that you didn't forfeit it. But I'm having trouble thinking that it's ineffective assistance of counsel to refuse, to fail to throw into the brief, you know, this kind of kitchen sink sort of approach. And actually there are circumstances in which defense lawyers stand up there and say, no, we had no obligation to do this, and so please don't consider it a forfeited point. Please consider it a new point. So it's a double-edged sword. Yes, Judge. Well, I mean, my argument here is that with the signal that Justice Breyer sent in Harris combined with – Well, and Justice Thomas never liked Harris. I mean, I know that. And Justice Thomas has never liked Almendares-Torres. And yet they haven't overruled it. In fact, they keep reaffirming it. I've noticed. What I look at is Justice Sotomayor's- But what a burden for defense counsel to have to pick through the Supreme Court decisions that way, and, you know, good marks for the people who are, you know, the Elaine lawyer, you know, the people who managed to get the issue up and get it changed. Well, you don't have that many things. In a particular case, this was the one obvious issue, these extra two years for brandishing. It would have been a simple matter. There's no indication he made a strategic decision. It was just overlooked, which doesn't completely answer your question, but it would have been simple enough on the one thing sitting there, a two-year increase in the sentence, to simply say we object to this, and that simply wasn't done. Well, that's true. Although, you know, the other thing I just want to say quickly is I think maybe with the benefit of hindsight, we all think that Elaine was inevitable, and, of course, they were going to pitch Harris out the window. There are ways of rationally saying that a jury has to agree to a higher sentence, but whether there's a mandatory minimum is not a jury kind of issue, just as we do with remittitures. So, you know, it wasn't a system that was simply impossible to understand. Although there was an acknowledgment from Justice Breyer that it was his nonacceptance of apprendi that caused him to vote the way he did. Well, he said what he said, but, you know, I. . . Mr. Beal, let me ask. On this problem, was the Harris problem fixable if it had been raised in the district court? If it had been. . . It would have changed the standard of review in the direct appeal, in our view, from plain error to harmless error. Well, right, but I'm trying to think about the bottom line result here, because at least as near as I can tell from this record, if Mr. Kirkland is being held responsible for supplying the guns to carry out the armed robbery, brandishing was certainly in mind. A conviction on a brandishing element would be virtually inevitable here. And a district judge, even if the conviction is formally only for using and carrying, the district judge would be looking at evidence that he was, in fact, responsible for brandishing and might say, well, five years is the minimum on using and carrying, but there's no. . . I ought to go ahead and impose seven. He could have done that and could do that on remand, but I point to the jury question that came out, which showed some uncertainty on the part of the jury about how the gun statute worked, and the question was not answered. They were simply said, read your instructions again. So I think it's very. . . It would be inappropriate to conclude what the jury would have ruled if they'd been given a special interrogatory on brandishing. They might very well have said, for whatever reason, no. . . Even though they convicted on the gun, they might not have convicted on the brandishing because of their uncertainty about that area, which their question to the judge reflects. Okay. I think it's time for you to save rebuttal time if you want. Thank you. Thank you. Ms. Kostanek? May it please the Court. Andreana Kostanek on behalf of the United States. In order to be effective under Strickland, a defense attorney is not required to anticipate changes in governing Supreme Court precedent. He is not required to make arguments that are contrary to governing Supreme Court precedent. What do you think a defense lawyer's obligation would be on October 6, 2012? The day after Alene. . .the day after cert is granted in Alene. I think that after that date, it would be prudent to preserve an objection. Prudent or required? I don't think that it would be. . . We don't have to decide in this case, obviously, but the only question presented in Alene was whether Harris should be overruled. The governing Supreme Court precedent, while Alene was pending at the Supreme Court, still was that Harris was good law, and I don't think that an attorney needs to predict the votes on the Supreme Court. That's not my question. The only thing an attorney needs to do is notice the grant of certiorari, which doesn't happen unless the justices themselves have reopened an issue. On October 6, 2012, Harris was in play in the Supreme Court. So does a competent lawyer, or does a lawyer to be competent, have to bring that to the attention of the district judge? And if he doesn't, would the government then on appeal turn around and say, oh, you know, this is a plain error standard of review, very hard to surmount? That's what the lawyers are concerned about. They want to make the right objections so that they can get at least a fair hearing on it at later stages. So I don't think that the only thing that's required is for the lawyer to make an objection to preserve the argument. The lawyer needs to consider the case as a whole. In this case, the brandishing enhancement, even if made after certiorari was granted, would not have been meritorious. Look, I completely understand the contention that we're supposed to judge the performance in the case as a whole, but your brief doesn't ask us to do that. This is a claim brought saying the lawyer made an isolated injury. Let's look at this injury. He made an isolated error. Let's look at this error all by itself. You might have responded, you have to look at this in the context of the case as a whole, but that's not the government's response. That's correct. The government thinks that, especially because the sentencing in this case happened before cert in the lane was granted, this court does not need to reach that issue. I think that the prejudice inquiry is a clear one, as Judge Connelly held below, but it's not necessary for the court to reach it. Cert had not been granted. Governing Supreme Court precedent, Harris, held that branching did not need to be proven beyond a reasonable doubt or alleged in the indictment, and that disposes of the issue. It's consistent with how this court treated ineffective assistance of counsel claims after apprendi in cases like Smith and similar cases where it said the defense attorneys did not need to anticipate or foresee apprendi before apprendi, before the opinion was released. Although there was a lot of debate about how much lawyers are supposed to foresee and how much we say you can rely on what appears to be settled law of the circuit or settled law of the Supreme Court because, as I said, it's a two-edged sword here. You do expect the law to develop. Somebody was representing Mr. Allain and succeeded in getting the Supreme Court to pay attention to it, so you want to encourage innovative arguments. Yes, Your Honor, and the government acknowledges that tension and that ambiguity here. I don't think that it's in play under the facts of this case, given the timing in question, but we do acknowledge that sometimes that ambiguity arises, particularly with respect to that plain error standard of review. I was trying to figure out, I guess I still am, whether we ought to stick with a fairly bright-line rule, which is what you're advocating, and then given the degree of publicity these days for Supreme Court oral arguments with transcripts available online the same day or the next day, Allain is argued and commentators predict reversal. I'm not quite sure what our best approach is here, but I guess I'll confess to some attraction to a bright line. You know, people dedicate their whole careers to trying to predict where the justices are going to fall in these cases, and that's a very noble profession, but an ordinary defense attorney doesn't need to do that. They're not experts on where Justice Breyer or Justice Thomas is going to fall. And it turns out there are no experts. There was a recent article published showing that if you look at Supreme Court specialists who predict after oral argument, they get only 75% of the decisions right. Sounds about right. And by the way, if you predict that 70% of all decisions will be reversal, you'll be right. So the best experts in the world get a 5% improvement over the prediction. Everything will be reversed. Probably not statistically significant. I think that that demonstrates some of the problem with picking a rule other than the Bright Line rule of when there's governing precedent. So I'm looking forward to the government not arguing plain error the next time a lawyer fails to raise something. I acknowledge your concerns about the tension there, but don't think that it's necessarily inconsistent, the two positions respectively. If there are no further questions, the government asks that this court affirm the district court's judgment. All right. I think you were very low on time, Mr. Veal, but we will give you a bit more. I have maybe two brief points. Certainly. Number one is I would suggest that the October 6th date is correct. In the Cardena case, which had an aligned issue, two of us made post-trial objections after cert was filed, and one counsel didn't. We were on harmless error. He was on plain error. We thought he was acting in ineffective assistance to counsel at the time. That was our perception of that. So we think at the very least there's an obligation to know when the Supreme Court's granted cert. And the only other point I would make is that in the prejudice side of this, we would ask this court to consider the third circus approach in Lewis, which is, I'm not going to go into details, as being a correct interpretation of a prejudice. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement, and the court will be adjourned.